IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SEMONE BRISSON,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )
                                         )         1:23-cv-891
SALISBURY HOUSING AUTHORITY,             )
(also known as Housing                   )
Authority of Salisbury, NC),             )
SALISBURY HOUSING CORPORATION,           )
INC., and BRADLEY MOORE, in              )
his individual capacity,                 )
                                         )
            Defendants.                  )

**AMENDED[1] MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Before this court is a Motion to Dismiss filed by Defendant
Salisbury Housing Corporation, Inc., (Doc. 19), and a Motion to
Dismiss filed by Defendant Salisbury Housing Authority, and
Defendant Bradley Moore, (Doc. 12). For the reasons stated
herein, Defendant Salisbury Housing Corporation, Inc.'s motion
will be granted. Defendant Salisbury Housing Authority and
Defendant Bradley Moore's motion will be granted in part and
denied in part.

---

[1] This court has corrected statements of law on pages 15–17
and 22.

## I.   <u>FACTUAL BACKGROUND</u>

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint." <u>Ray v. Roane</u>, 948 F.3d 222, 226 (4th Cir. 2020). The facts, taken in the light most favorable to Plaintiff, are as follows.

Plaintiff is a resident of Salisbury, North Carolina, and, at the times relevant to the allegations in her Complaint, was an employee of the Housing Authority of the City of Salisbury, North Carolina ("SHA").[2] (Complaint ("Compl.") (Doc. 1) ¶¶ 7, 12.)

SHA is a public housing agency in Salisbury, North Carolina. (<u>Id.</u> ¶ 10.) Bradley Moore ("Moore") is the Executive Director of SHA. (<u>Id.</u> ¶ 9.) Salisbury Corporation, Inc. ("SHC") is a nonprofit entity registered with the Secretary of State, who, together with SHA, "is responsible for the administration and distribution of funds" related to Section 8 housing in Salisbury, NC, and "is an employer as defined by the ADA." (<u>Id.</u> ¶ 11.)

---

[2] Defendants allege that Plaintiff has improperly named Defendant Salisbury Housing Authority and the true name is "Housing Authority of the City of Salisbury, North Carolina." (Doc. 13 at 1.) (For ease of reference, the entity will be referred to as "SHA" in this Order. The proper name will be formally addressed <u>infra</u> Section IV.A.

Plaintiff suffers from "chemical sensitivities and allergies," which cause her to experience "mild to moderate, but not life threatening," adverse reactions to certain scented substances, "including but not limited to air fresheners, scented candles, and aerosol disinfectant spray," (id. ¶ 13), as well as "certain cleaning products and heavy perfume," (id. ¶ 124). Plaintiff's adverse reactions include, among other symptoms, "mild to severe breathing difficulty" and "foggy thinking. (Id. ¶ 14.) Plaintiff's condition dates to her "early adult years" and she "has sought and continues to seek medical treatment" to address it. (Id. ¶ 13.)

SHA first hired Plaintiff in January 2018 and, over the successive years, Plaintiff served in a variety of part-time roles for SHA. (Id. ¶¶ 2, 131.) On September 16, 2022, Plaintiff assumed a new, full-time administrative position for SHA titled "Occupancy Specialist." (Id. ¶¶ 12, 64.) In this position, she was "provided an office in the main office of the SHA, where she was expected to work for the majority of her full-time hours." (Id. ¶ 12.)

On the morning of Plaintiff's first day of work as an Occupancy Specialist in September 2022, she noticed that her coworker, Tasha Gibbs, was spraying a Clorox anti-bacterial formula throughout the receptionist area, lobby, and other areas

- 3 -

of the SHA office – a standard practice of Gibbs' at the time due to concerns about the Covid-19 virus. (Id. ¶¶ 22-26.) Plaintiff knew "she was going to have a serious reaction to the spray," (id. ¶ 23), and as she "start[ed] to feel symptoms," (id. ¶ 26), approached Gibbs to notify Gibbs of her chemical sensitivities, (id. ¶ 27). Gibbs apologized and said "she did not know." (Id. ¶ 28.) After speaking with Gibbs, Plaintiff returned to her office, closed her door, and attempted to open her window to allow in fresh air, but came to realize that "the window in her office did not open." (Id. ¶ 29.)

Later that morning, Plaintiff informed her manager Cameron Allison of her adverse reaction to the Clorox formula sprayed by Gibbs, as well as the fact that Plaintiff suffers from chemical sensitivities to "aerosols" and various other "chemicals and fragrances." (Id. ¶ 34, 35.) Later that morning, Allison told Plaintiff that "there would be occasions" where Plaintiff would inevitably come into contact with odors on the job, (id. ¶ 37), but that "he would speak with Gibbs" about the Clorox formula, (id. ¶ 36). After the events of that first day, "Gibbs did not spray again," (id. ¶ 41), and for the next two weeks, Plaintiff experienced no further "chemical exposure[s]," (id. ¶ 61.) However, the can of Clorox spray remained "sitting out on the credenza at the receptionist area" of the office. (Id. ¶ 41.)

Additionally, "a commercial, wall mounted, Airwick automatic air freshener sprayer" was stationed in the lobby and a "can of air freshener" was stationed in the bathroom. (Id. ¶¶ 42, 59.)

On September 27, 2022, as Plaintiff walked down the hallway to visit with a coworker, she noticed that the "hallway was full of air freshener." (Id. ¶¶ 62, 65.) Plaintiff learned that the dispenser had recently been refilled, which "made it apparent that management had not educated the staff on [her] chemical sensitivities and the need to avoid unnecessary introduction of chemicals into the offices." (Id. ¶ 68.) Plaintiff texted her manager Allison and "asked him if he could have the air freshener taken down" as well as to "please make sure that the employees in the office knew about [Plaintiff's] chemical sensitivity." (Id. ¶ 69.)

The next day, September 28, 2022, Plaintiff noticed that her colleague Gibbs had lit a "scented candle." (Id. ¶¶ 70, 79.) To avoid having the candle's fumes enter her office, Plaintiff "closed [her] door . . . even though she knew that people in the office might think this rude." (Id. ¶ 72.) Not knowing if or what her manager Allison had communicated to coworkers about her condition, Plaintiff approached Allison to further discuss her chemical sensitivities and provide more context about the range of fragrances that cause her "health issues." (Id. ¶ 79.) In

discussing her issues, Plaintiff informed Allison that another business in the area "had adopted a 'scent-free' workplace policy and that people with noticeable fragrances were asked to leave and return without the scents/fragrances." (Id. ¶ 84.) Allison "listened patiently" and responded that he would "talk with Tasha [Gibbs]" and "let Bradley [Moore] know" about Plaintiff's condition. (Id. ¶ 89.) To Plaintiff's knowledge "[n]o texts or emails were sent . . . about her sensitivity and the need to avoid the use of chemicals/fragrances in the office." (Id. ¶ 95.)

The next week, Plaintiff emailed Allison expressing concern about fragrances she smelled in the office of a coworker with whom she was supposed to collaborate and asked for Allison to "[p]lease advise" on how she should proceed. (Id. ¶ 107.) "Within about 10 or 15 minutes of sending the email," SHA's Executive Director, Moore, approached Plaintiff and asked her "'What's the problem?' in a very irritated and confrontational tone." (Id. ¶¶ 109, 112.) Plaintiff attempted to explain her chemical sensitivity to Moore, (id. ¶¶ 124, 127), but "Moore did not offer to work with Plaintiff to identify a reasonable accommodation that would allow [her] to maintain her full-time position," (id. ¶ 149). Instead, "Moore terminated her" during the conversation, instructing her, "Take your things and go home

for good!" (Id. ¶¶ 138, 154.)

Based on the facts above, Plaintiff listed three total claims for relief under the Americans with Disabilities Act of 1990 ("ADA") and the North Carolina Persons with Disabilities Protection Act ("NCPDPA") in her Complaint:

I.   Failure to Provide a Reasonable Accommodation in Violation of the ADA.

II.  Retaliation in Violation of the ADA.

III. Discrimination and Retaliation in Violation of the NCPDPA. (Id. ¶¶ 159-83.)

## II. **PROCEDURAL HISTORY**

Plaintiff was issued a Right to Sue Letter by the EEOC on or about July 22, 2023. (Id. ¶ 6.) Plaintiff filed her Complaint in this suit in federal court on October 20, 2023. (Id. ¶ 1.)

Defendant SHA[3] and Defendant Moore jointly filed a motion to dismiss on November 30, 2023, (Doc. 12), as well as a supporting brief, (Defs. SHA & Moore's Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs. SHA & Moore's Br.") (Doc. 13)). Defendant SHC filed a motion to dismiss on February 5, 2024, (Doc. 19), as

---

[3] Upon this court's belief, Defendant SHA's proper name is "Housing Authority of the City of Salisbury, North Carolina." Defendant was improperly named in Complaint as "Salisbury Housing Authority (also known as Housing Authority of Salisbury, NC)." For further discussion, see infra p. 9-12.

- 7 -

well as a supporting brief, (Def. SHC's Mem. of Law in Supp. of Def.' Mot. to Dismiss ("Def. SHC's Br.") (Doc. 20)).

Plaintiff responded to SHA and Moore's motion, (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pl. First Resp.") (Doc. 17)), and Defendants SHA and Moore replied, (Defs. SHA & Moore's Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Def. SHA & Moore's Reply") (Doc. 18)). Plaintiff also responded to Defendant SHC's motion (Pl.'s Mem. in Opp'n to Def. SHC's Mot. to Dismiss ("Pl. Second Resp.") (Doc. 27)), and Defendant SHC replied, (Def. SHC's Reply to Pl.'s Opp'n to Def. SHC's Mot. to Dismiss ("Def. SHC's Reply") (Doc. 29)).

Defendants move to dismiss Plaintiff's federal ADA claims and state NCPDPA claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Additionally, Defendant SHA moves to dismiss the claims on the ground that Plaintiff misnamed SHA in her Complaint and thus sued an entity that does not "exist," (Defs. SHA & Moore's Br. (Doc. 13) at 1, 11),[4] and Defendant SHC moves to dismiss the claims on the ground that Plaintiff failed to effect service, (Def. SHC's Br. (Doc. 20) at 1).

_____

[4] All citations in this Memorandum Opinion and Order to documents filed within the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Case 1:23-cv-00891-WO-JLW   Document 32   Filed 09/30/24   Page 8 of 24

## III.  <u>STANDARD OF REVIEW</u>

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556–57). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. <u>Iqbal</u>, 556 U.S. at 678. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in the plaintiff's favor." <u>Est. of Williams-Moore v. All. One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.

- 9 -

## IV. <u>ANALYSIS</u>

### A. <u>Motion to Dismiss for Misnaming Defendant SHA</u>

Plaintiff improperly named Defendant SHA in her Complaint as the following: "Salisbury Housing Authority (also known as Housing Authority of Salisbury, NC)." (Compl. (Doc. 1) at 1.) SHA contends that "no such entity exists," (Defs. SHA & Moore's Br. (Doc. 13) at 11), and thus that this court should dismiss Plaintiff's Complaint for a lack of personal jurisdiction, (Defs. SHA & Moore's Reply (Doc. 18) at 4). Plaintiff's response focuses on tangential issues related to businesses' registration with the Secretary of State, service, and personal jurisdiction. (<u>See</u> Pl. First. Resp. (Doc. 17) at 5–12.)

Both parties' arguments miss the point. This court sees no indication that SHA does not "exist" in a literal sense. Rather, Plaintiff simply neglected to include the entity's full legal name – specifically, omitting the words "the City of" – in its filings. A search of the North Carolina Secretary of State website reveals an active municipal entity with the legal name, "Housing Authority of <u>the City of</u> Salisbury, North Carolina."[5] Moreover, SHA introduces itself as "Housing Authority of <u>the City of</u> Salisbury, North Carolina" in the opening line of its

---

[5] <u>Business Registration</u>, North Carolina Sec'y of State, https://www.sosnc.gov/online_services/search/by_title/_Business_Registration (last visited Sept. 17, 2024) (emphasis added).

- 10 -

memorandum in support of its motion to dismiss, (Defs. SHA &
Moore's Br. (Doc. 13) at 1) (emphasis added)), and again in
several places throughout its reply brief, (Defs. SHA & Moore's
Reply (Doc. 18) at 1, 6).

The issue here is a simple misnomer. Misnomers relate to
sufficiency of process, and dismissal, if appropriate, is
governed by Rule 12(b)(4). See, e.g., Connell v. Adams, No.
1:22-cv-935, 2023 WL 2914856, at *4 (M.D.N.C. Apr. 12, 2023). In
the present case, dismissal is not appropriate.

The prevailing standard in the Fourth Circuit is that "a
mere misnomer injures no one, and there is no reason why it
cannot be corrected by amendment." Connell, 2023 WL 2914856, at
*4 (cleaned up) (quoting United States v. A.H. Fischer Lumber
Co., 162 F.2d 872, 874 (4th Cir. 1947)). "It has long been the
rule in this circuit that service of process is not legally
defective simply because the complaint misnames the defendant in
some insignificant way." Morrel v. Nationwide Mut. Fire Ins.
Co., 188 F.3d 218, 224 (4th Cir. 1999); Miller v. Nw. Region
Libr. Bd., 348 F. Supp. 2d 563, 566-67 (M.D.N.C. 2004)
(rejecting a defendant's argument that "there is no such entity"
when the defendant "clearly had notice of this action and should
have known that the action was brought against [it]"). "As a
general rule, the misnomer of a corporation . . . is immaterial

- 11 -

if it appears that [the corporation] could not have been, or was not, misled." <u>A.H. Fischer Lumber Co.</u>, 162 F.2d at 873.

Defendant SHA could not have been, and was not, misled. Indeed, SHA had clear notice of Plaintiff's action. This is evidenced by SHA's prompt response to Plaintiff's EEOC Complaint and SHA's ongoing engagement with the pleadings in the present suit.

While this court notes that Plaintiff could have easily corrected this misnomer prior to this point by filing a motion to amend her Complaint, yet did not, it also recognizes a strong preference within the Fourth Circuit for resolving cases on the merits. <u>See</u> <u>United States v. Shaffer Equip. Co.</u>, 11 F.3d 450, 462 (4th Cir. 1993). This court will allow Plaintiff twenty days to amend her Complaint to include the proper name of Defendant SHA: "Housing Authority of the City of Salisbury, North Carolina."

B. <u>Motion to Dismiss ADA Claims Against Improper Defendants</u>

Before addressing Plaintiff's ADA claims on the merits, Defendant Moore has raised issue as to proper party, (Doc. 13 at 12) and SHC has raised issues as to proper party and service of process, (Doc. 20 at 11, 12). Assuming without deciding that service of process on SHC was proper, this court finds that neither Moore nor SHC are proper parties.

- 12 -

First, "[i]t is well-established that the ADA provides a right of action against covered entities and not against individual defendants." Moore v. Ne. Univ., No. 1:18-cv-324, 2019 WL 825802, at *2 (M.D.N.C. Feb. 21, 2019) (citing Baird ex rel. Baird v. Rose, 192 F.3d 462, 471-72 (4th Cir. 1999)). In the present suit, Defendant Bradley Moore is an individual who serves as "the Executive Director" of SHA. (Compl. (Doc. 1) ¶ 9). As an individual who is not the employer, Moore is an improper party and the ADA claims against him will be dismissed.

Second, to state an ADA claim, a plaintiff must plead that the defendant "(1) fall[s] within the statutory definition of 'employer'; and (2) exercised substantial control over significant aspects of [her] compensation, terms, conditions, or privileges of employment." Miller v. Ingles, No. 1:09-cv-200, 2009 WL 4325218, at *7, (W.D.N.C. Nov. 24, 2009) (citing Magnuson v. Peak Tech. Servs., Inc., 808 F. Supp. 500, 507 (E.D. Va. 1992), aff'd, 40 F.3d 1244 (4th Cir. 1994)). A plaintiff must show that the defendant is not just an employer within the requirements of the ADA but is the plaintiff's employer.

Defendant SHC argues that Plaintiff never alleged in its Complaint that SHC is Plaintiff's employer. (Def. SHC's Br. (Doc. 20) at 12-13.) This court agrees. In relevant portions of her Complaint, Plaintiff states that SHC: (1) "is a nonprofit

- 13 -

corporation registered with the Secretary of State, and does business in Salisbury, NC"; (2) "together with [SHA] is responsible for the administration and distribution of [Section 8] funds"; and (3) "is an employer as defined by the ADA." (Compl. (Doc. 1) ¶ 11.)

However, Plaintiff provides no facts that tie SHC's status as an employer to SHC being Plaintiff's employer. Rather, Plaintiff pleads that "Defendants hired Plaintiff into a full-time position . . . for the SHA." (Compl. (Doc. 1) ¶ 2 (emphasis added)); see also id. ¶ 8.) Plaintiff's full-time position required her to work "in the main office of the SHA." (Id. ¶ 12 (emphasis added)). In fact, it appears Plaintiff refers exclusively to SHA, and not once to SHC, throughout the "Facts" section of her Complaint. (See generally id.) Moreover, Plaintiff does not rebut SHC's arguments on this point. Therefore, in addition to this court's own finding that Plaintiff failed to plead facts that SHC is her employer, this court furthers considers the argument to be conceded by Plaintiff based on her lack of response in her successive filing. See Hadley v. City of Mebane, No. 1:18-cv-366, 2020 WL 1539724, at *6-7 (M.D.N.C. Mar. 31, 2020).

Based on this analysis of the threshold issues concerning Moore and SHC, this court finds SHA to be the sole proper

- 14 -

defendant and, accordingly, Plaintiff's ADA claims will be dismissed as to SHC and Moore. This court will address the merits of Plaintiff's ADA claims against SHA below.

## C. **Motion to Dismiss ADA Claims for Failure to Plead Elements**

Plaintiff contends that Defendant SHA's actions violated the Americans with Disabilities Act of 1990 ("ADA") on two grounds. First, Plaintiff alleges that Defendant failed to provide a reasonable accommodation for her disability. (Compl. (Doc. 1) ¶¶ 159-164.) Second, Plaintiff alleges Defendants retaliated against Plaintiff by terminating her after she engaged in the protected action of discussing her disability with her supervisors and asking to identify a reasonable accommodation. (Id. at ¶¶ 165-173.) Defendant argues that Plaintiff's claims fail as a matter of law because Plaintiff cannot establish a prima facie case of disability discrimination under the ADA. (See Defs. SHA & Moore's Br. (Doc. 13) at 12–18.)

As with other employment discrimination claims, a plaintiff bringing a claim for relief under the ADA is not required to establish a prima facie case of discrimination or satisfy any heightened pleading standard at the motion to dismiss stage. See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 515 (2002); McCleary-Evans v. Md. Dep't of Transp., State Highway Admin, 780 F.3d 582, 584–85 (4th Cir. 2015). However, the plaintiff is

- 15 -

"required to allege facts to satisfy the elements of a cause of action created by that statute." See McCleary-Evans, 780 F.3d at 585; Bing v. Brivo Sys., LLC, 959 F.3d 605, 616 (4th Cir. 2020). In other words, "the ordinary rules for assessing the sufficiency of a complaint apply." Swierkiewicz, 534 U.S. at 511.

### Failure to Accommodate

The ADA "prohibits employers from 'discriminat[ing]' against 'qualified individual[s] on the basis of disability.' An employer unlawfully discriminates against an employee by, among other things, failing to 'mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee.'" Laird v. Fairfax Cnty., Va., 978 F.3d 887, 892 (4th Cir. 2020) (internal citations to statute omitted). A "reasonable accommodation" may include "making existing facilities used by employees readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12111(9)(A).

Thus, this court must determine whether Plaintiff "has alleged facts to satisfy" the elements of the failure to accommodate cause of action created by the ADA. See McCleary-Evans, 780 F.3d at 585. While Plaintiff is not required to assert a prima facie case of failure to accommodate, see id., to

the extent that Plaintiff pleaded facts that address prima facie elements, these facts are helpful for the court to determine whether Plaintiff has alleged an ADA claim that is "plausible on its face" as required by Iqbal and Twombly. Cf. Gaines v. Balt. Police Dep't, 657 F. Supp. 3d 708, 734 (D. Md. 2023) ("Although a plaintiff need not assert a prima facie case . . . to survive a Rule 12(b)(6) motion, references to the [prima facie] elements . . . is helpful to gauge the sufficiency of the allegations.").

The prima facie elements of an ADA failure to accommodate claim are as follows: "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position; and (4) that the employer refused to make such accommodation." Wirtes v. City of Newport News, 996 F.3d 234, 238–39 (4th Cir. 2021).

Within the meaning of the ADA, a disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(a). "Examples of 'major life activities' include 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, [thinking,] breathing, learning, and working.'" Lochridge v. City of Winston-Salem, 388 F. Supp. 2d 618, 625 (M.D.N.C. 2005)

- 17 -

(quoting 29 C.F.R. § 1630.2(j)). According to the Code of Federal Regulations, "[t]he term 'substantially limits' sh[ould] be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).

Defendant SHA argues that Plaintiff does not have a "physical or mental impairment that substantially limits [a] major life activity" because she "fails to state what major life activities" her purported disability limits. (Defs. SHA & Moore's Br. (Doc. 13) at 13, 15.) However, SHA's argument overlooks Plaintiff's contention that she experiences physical "immune system reactions such as mild to severe breathing difficulty" as well as "foggy thinking." (Compl. (Doc. 1) ¶ 14.) As detailed above, "breathing" and "thinking" are "major life activities" expressly enumerated by the Code of Federal Regulations.

Although the Complaint provides only a few details about Plaintiff's condition, this court finds the facts and reasonable inferences drawn from those facts sufficient to plausibly allege a disability. Whether or not Plaintiff's sensitivity and alleged physical difficulties are sufficient to establish a "substantial limit" on "one or more major life activities" are matters that will have to be addressed following discovery.

Next, Defendant argues that Plaintiff's sought accommodation was unreasonable, and that no reasonable accommodation would have allowed Plaintiff to perform the essential functions of her job. (See Defs. SHA & Moore's Br. (Doc. 13) at 15-18.) Defendant contends that "it is apparent that Plaintiff's 'requested accommodation' required nothing less than <u>an entirely scent-free workplace</u>." (<u>Id.</u> at 16 (citing Compl. (Doc. 1) ¶¶ 84, 85)). Indeed, Plaintiff discussed a "scent-free" workplace policy with her manager on multiple occasions, (Compl. (Doc. 1) ¶¶ 84, 126), and even opines in her Complaint that such a policy would have been "a reasonable accommodation for [her] disability," (<u>id.</u> ¶ 126).

Defendant argues that the majority position of district courts within the Fourth Circuit is that a "scent-free" workplace is not a reasonable accommodation under the ADA. (<u>See</u> Def. SHA's Br. (Doc. 13) at 16-17) (citing <u>Feldman v. Charlotte-Mecklenburg Bd. of Educ.</u>, No. 3:11-cv-34, 2012 WL 3619078, at *7 (W.D.N.C. Aug. 21, 2012); <u>Anderson v. Sch. Bd. Of Gloucester Cnty.</u>, No. 3:18-cv-745, 2022 WL 732231, at *12 (E.D. Va. Mar. 10, 2022); <u>Call v. Panchanathan</u>, No. 1:20-cv-260, 2021 WL 4206423, at *4 (E.D. Va. Sept. 15, 2021).) However, <u>Feldman</u>, <u>Anderson</u>, and <u>Call</u> each addressed the issue at summary judgment with the benefit of a more fulsome record of evidence.

Moreover, while the Feldman court stated that "it is Plaintiff's burden to demonstrate that there is some reasonable accommodation that could have allowed her to perform the essential functions of her job," Feldman, 2012 WL 3619078, at *7 (citing Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994)), the court also instructed that "[o]nce an employee informs her employer of the need for a reasonable accommodation it is the responsibility of both the employee and the employer to determine what precise accommodation is necessary." Id. It can be reasonably inferred from Plaintiff's Complaint that SHA did not meaningfully engage in back-and-forth discussion to determine whether a reasonable accommodation existed. While Plaintiff referenced a "scent-free" environment to her supervisors, she also asked to discuss with her supervisors "modifications to the workplace" that would allow her to minimize "risk [of] exposure to substances to which she had a known reaction," (Compl. (Doc. 1) ¶ 167), and alleges that "[i]nstead of receiving an accommodation or an opportunity to discuss an accommodation," she was fired, (id. ¶ 169).

At this stage of the pleadings, this court is not prepared to draw the inference against Plaintiff that an entirely "scent free" workplace was the only accommodation that would have redressed her purported disability. For example, construing

reasonable inferences in favor of Plaintiff suggests the following accommodations may have been available: (i) relocation to an office with a working window would have allowed Plaintiff to minimize her adverse reactions, (see Compl. (Doc. 1) ¶¶ 29, 132, 144); (ii) management could have promptly notified and educated staff about Plaintiff's sensitivity, "asked staff not to spray chemicals or fragrances or burn candles," and "taken the air freshener cans and dispensers out of the office" to cut down on unnecessary introductions of certain scented substances, (see id. ¶ 68, 103), short of the complete ban on all fragrances. Discovery may reveal more.

Defendant SHA does not argue in detail the second or fourth elements of a prima facie case for failure to accommodate - that Defendant had notice of Plaintiff's purported disability and that Defendant refused to make accommodations. Likewise, this court finds that both elements were sufficiently plead by Plaintiff. According to Plaintiff, she notified her supervisor of her purported disability on multiple occasions, (see, e.g., id. ¶¶ 35-36, 69, 79, 124), and was fired before accommodations were provided, (id. ¶ 138).

For the reasons stated above, Defendant SHA's motion to dismiss Plaintiff's ADA claim for failure to accommodate will be denied.

## Retaliation

The ADA "prohibits retaliation against employees who seek the Act's statutory protections." Laird, 978 F.3d at 892 (citing 42 U.S.C. § 12203(a)-(b)). As explained above, Plaintiff is not required to plead the prima facie elements of an ADA retaliation claim, yet those prima facie elements, when pleaded, may be instructive to the court. The prima facie elements of an ADA retaliation claim are: "(1) that she has engaged in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action." Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002).

Defendant SHA does not directly contest Plaintiff's retaliation claim. Instead, SHA argues (as discussed above) that Plaintiff does not have an ADA-recognized disability and that there were no reasonable accommodations for her chemical sensitivities. Having found that Plaintiff met her burden for these arguments in her pleadings, this court likewise finds that Plaintiff has sufficiently plead the elements of a retaliation claim. Plaintiff sought to discuss accommodations for her disability with a supervisor, (Compl. (Doc. 1) ¶ 127), and during that very same conversation she was fired, (id. ¶ 138).

- 22 -

As such, SHA's motion to dismiss Plaintiff's ADA retaliation claim will be denied.

## C. **Motion to Dismiss for Failure to State an NCPDPA Claim**

Plaintiff additionally asserts a claim of discrimination in violation of the North Carolina Persons with Disabilities Protection Act ("NCPDPA"). N.C. Gen. Stat. § 168A-1 et seq. "The NCPDPA creates a cause of action for a person with a disability who is aggrieved by a discriminatory practice as defined in the act." Cone ex rel. Cone v. Randolph Cnty. Schs., 302 F. Supp. 2d 500, 514 (M.D.N.C. 2004), aff'd sub nom. Cone v. Randolph Cnty. Schs., 103 F. App'x 731 (4th Cir. 2004) (citing § 168A-11(a)).

> Claims under the NCPDPA, however, are limited in that "no court shall have jurisdiction over an action filed under this Chapter where the plaintiff has commenced federal judicial or administrative proceedings under . . . the Americans with Disabilities Act of 1990 . . . involving or arising out of the facts and circumstances involved in the alleged discriminatory practice under this Chapter.

Id. (quoting § 168A-11(c)). "Thus courts will dismiss a plaintiff's claims under the NCPDPA when they arise out of the same facts as a claim under the Rehabilitation Act or ADA." Id. Here, Plaintiff's claim for relief under the NCPDPA arises from the same facts as her ADA claim, and thus fails as a matter of law. Plaintiff's claim under the NCPDPA will be dismissed against all defendants.

- 23 -

## V.   <u>CONCLUSION</u>

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Salisbury Housing Corporation, Inc.'s Motion to Dismiss, (Doc. 19), is **GRANTED** and all claims against Salisbury Housing Corporation, Inc. are **DISMISSED.**

**IT IS FURTHER ORDERED** that the Housing Authority of the City of Salisbury, North Carolina and Bradley Moore's Motion to Dismiss, (Doc. 12), is **GRANTED IN PART AND DENIED IN PART**. All claims against Defendant Moore are **DISMISSED.** Further, Plaintiff's NCPDPA claim against the Housing Authority of the City of Salisbury, North Carolina is **DISMISSED.** In all other respects, the motion is **DENIED.**

This the 30th day of September, 2024.

_____
United States District Judge

- 24 -